# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

SORIA WARNER,     )
          )
    Plaintiff,   )
          )   CIVIL NO. 2005-0128
v.           )
          )
          )
KMART CORPORATION,   )
          )
    Defendant.  )
          )
          )
_____)

## MEMORANDUM OPINION

FINCH, SENIOR JUDGE

 THIS MATTER comes before the Court on a Motion for Summary Judgment filed by Defendant Kmart Corporation.  Plaintiff Soria Warner opposes such Motion.  After careful consideration and upon review of the briefs submitted by the parties, the Court issues the following ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

 Plaintiff's Complaint[1] alleges the following counts against Defendant: (1) assault and battery; (2) violation of Title VII of the Civil Rights Act of 1964; (3) violation of the Virgin Islands Civil Rights statute 10 V.I.C. § 64; (4) negligent hiring, supervision or retention of its Store Manager creating an undue risk of harm; (5) intentional or negligent infliction of emotional distress; (6) misrepresentation; (7) constructive discharge; (8) constructive discharge in violation

---

[1] On November 14, 2005, Plaintiff was granted leave to file a First Amended Complaint.  Thereafter, on July 3, 2007, she was granted leave to file a Second Amended Complaint.  Unless otherwise indicated, the "Complaint" as referred to herein is the Second Amended Complaint.

of the Wrongful Discharge Act, V.I. Code Ann. tit. 24, § 76(a); and (9) punitive damages.

Plaintiff began working at Kmart on November 27, 1997 as an Office Manager and was promoted to Personnel Manager in 2000. See Pl.'s Resp. to Def.'s Statement of Undisputed Facts ("RSOF") at ¶ 1; Complaint at ¶ 4. In March 2000, Plaintiff alleges that several Kmart employees had discussions regarding the unionization of Kmart's salaried employees. Id. at ¶ 9. Plaintiff reported the unionization efforts to Kmart's Corporate Management, who then sent two individuals from Puerto Rico to investigate the unionization efforts. Id. at ¶¶ 11, 14. Plaintiff alleges that these two individuals told other Kmart employees that it was Plaintiff who had notified Corporate Management of the unionization efforts. Id. at ¶ 15. Plaintiff claims that two of the union organizers began to "sabotage" her job and Kmart's Management did nothing about it. Id. at ¶¶ 16, 18. According to Plaintiff, "[t]hey got access to her computer and would change the work schedules she prepared so they would be wrong, constantly publicly referred to Plaintiff as the demon, refused to come to Plaintiff's office when she paged them and made her existence totally stressful." Id. at 16. Plaintiff avers that the stress caused her to miscarry in April 2000. Id. at ¶ 17. In April 2002, Kmart changed Store Managers at its Sunny Isle store in St. Croix, Virgin Islands. Id. at ¶ 22. Soon thereafter, the alleged hostile treatment of Plaintiff stopped. Id.

In July 2002, Kmart hired a new male Store Manager for its Sunny Isle store. Id. at ¶ 23. Plaintiff claims that the new Store Manager made improper advances, asking her to lunch and asking her to meet him outside of work. Id. at ¶ 27. Plaintiff alleges that the Store Manager made lewd sexual comments about Plaintiff's body and discussed how he liked women "with some meat on them so I can hold on to them." Id. In addition, Plaintiff avers that three other female staff in the office conducted a sex survey on January 11, 2003. Id. at ¶¶ 30, 34. The women allegedly asked Plaintiff about her favorite sexual positions, how many sex partners she

has had, who she was currently having sex with, and demanded to see her underwear.  Id.
Plaintiff reported the improper behavior and lewd language of the female staff to the Store
Manager but he allegedly disregarded the complaint and told Plaintiff that, "if that is the way
they behave to relieve their stress so be it."  Id. at ¶¶ 34-35.

Plaintiff reported the alleged sexual harassment of the Store Manager and the female staff
to Kmart's Human Resources District Manager in Puerto Rico and to Kmart's corporate office in
Michigan.  Id. at ¶¶ 36-37.  Plaintiff claims that the individual she spoke with at Kmart's
corporate office in Michigan informed Plaintiff that her reporting would remain strictly
confidential.  Id. at ¶¶ 39-40.  In January 2003, the Human Resources District Manager arrived at
the Sunny Isle store to investigate Plaintiff's complaints of sexual harassment.  Id. at ¶¶ 41-42.
Plaintiff claims that she was later called into the Store Manager's office, who questioned her as
to whether she knew what had occurred and why the Human Resources District Manager was at
the store.  Id. at ¶ 48.  Plaintiff stated that she did not know and the Store Manager allegedly told
her that, "when he finds out who reported him he would make sure they pay for it no matter how
long it takes."  Id. at ¶¶ 48-49.  The following day, Plaintiff claims that the Store Manager called
her into his office and had a conference call with the Human Resources District Manager, who
stated over speaker phone that Plaintiff was the individual who had reported the sexual
harassment.  Id. at ¶¶ 53-58.  As a result of the stress caused by this confrontation, Plaintiff avers
that she suffered an anxiety attack.  Id. at ¶ 61.

Plaintiff maintains that she was retaliated against by the Store Manager and other Kmart
employees because she had reported the alleged sexual harassment occurring at the store.  Id. at ¶
62.  The Store Manager allegedly interfered with Plaintiff's job duties, increased her assignments
to near impossible amounts, gave her negative evaluations, filed false discipline reports against

3

her and demoted her to Front End Lead Associate from her position as Personnel Manager. RSOF at ¶ 18; Complaint at ¶¶ 63-64, 87-88.  Additionally, Plaintiff avers that the Store Manager and other female employees repeatedly harassed, humiliated, and dehumanized her in the presence of other employees and customers.  Id. at ¶ 86.  Plaintiff insists that Kmart failed to properly investigate her claims of sexual harassment and retaliation.  Id. at ¶ 89.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2004 and received a Notice of Right to Sue dated June 6, 2005.  Id. at ¶ 91.  She resigned from her employment at Kmart in October of 2005. See Pl.'s Concise Statement of Additional Facts ("CSOF") at ¶ 36.

Plaintiff filed this lawsuit in August 31, 2005 against Defendant Kmart.  Defendant filed a Motion for Summary Judgment (Docket No. 122) on November 8, 2008 seeking to dismiss all of Plaintiff's counts contained in the allegations pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  Plaintiff opposes Defendant's Motion, claiming that she has set forth sufficient evidence for a jury to find in her favor on her claims.  See Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 5 (Docket No. 145).

## II.    STANDARD OF REVIEW

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "The mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment." Id. at 247-48.  The moving party has the burden of proving that there is no material

issue of fact in dispute and, once the moving party has carried its burden, the nonmoving party

must produce sufficient evidence that will reasonably support a jury verdict in its favor and not

just "some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 585-86 (1986).  In analyzing this motion for summary judgment, this

Court must view the record in the light most favorable to the nonmoving party and draw all

reasonable inferences in that party's favor.  See Morton Intern., Inc. v. A.E. Staley Mfg. Co., 343

F.3d 669, 680 (3d Cir. 2003); Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).


III.    DISCUSSION

Defendant contends that Plaintiff's claim for (A) assault and battery is precluded by the

exclusive remedy under the Workers Compensation Act ("WCA"), 24 V.I.C. §§ 251-285, (B)

discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") is time-barred, (C)

discrimination under 10 V.I.C. § 64 has already been dismissed, (D) negligent or knowing

employment of its Store Manager creating an undue risk of harm has been abandoned, (E)

intentional infliction of emotional distress is not supported by any facts indicating extreme and

outrageous conduct, (F) negligent infliction of emotional distress is precluded by the exclusive

remedy under the WCA, (G) constructive discharge is not a cognizable claim under the

Wrongful Discharge Act ("WDA") and is preempted in its application to supervisors, and (H)

intentional or negligent misrepresentation fails because there is no allegation that any

representation was false at the time it was made.  See Def.'s Mem. in Supp. of Mot. for Summ. J.

(Docket No. 114).  The Court will consider each issue in turn.

5

### A.  Assault and Battery

 Defendant argues that Plaintiff's claim for assault and battery, which arose from the alleged acts of sexual harassment she was subjected to at work, is precluded by the WCA because the injuries Plaintiff suffered are compensable only under the WCA.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 3-4.   Additionally, Defendant argues that Kmart is not vicariously liable for the alleged assault and battery.

### 1.  Preclusion Under WCA

Plaintiff contends that there is an exception to the exclusivity bar for tort suits where the employee can show that the conduct of the employer can be regarded as so egregious as to exceed the bounds of negligence and constitute intentional wrongdoing.  See Pl.'s Opp'n to Mot. for Summ. J. at 33-34.

The exclusive remedy provision of the WCA, 24 V.I.C. § 284(a), provides, in pertinent part:

> When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident to, or disease or death of, an employee not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be the same as if this chapter did not exist.

24 V.I.C. § 284(a); see also Chinnery v. Government of Virgin Islands, 865 F.2d 68, 70 (3d Cir. 1989) ("When an employee's injury is compensable under a workers' compensation statute, by reason of exclusive remedy provisions, such as WCA § 284(a), the employer is not liable for negligence at common law").  There is an implied exception to the exclusivity provision of the WCA for tort suits where the employee can show that "the conduct [of the employer can] be regarded as so egregious as to exceed the bounds of negligence." Chinnery, 865 F.2d at 72; see Eddy v. V.I. Water & Power Auth., 369 F.3d 227, 234 (3d Cir. 2004).  The Third Circuit has

ruled that the WCA does not extend to intentional torts inflicted with the "actual, specific and deliberate intention to cause injury" to the employee.  Id. at 235 (quoting Ferris v. Virgin Islands Industrial Gases, Inc., 23 V.I. 183, 188 (V.I. Terr. Ct. 1987)).

In the Virgin Islands, a defendant is subject to liability for assault if: (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) the plaintiff "is thereby put in such imminent apprehension."  Restatement (Second) of Torts § 21 (1965).[2]  "Imminent apprehension" means that the plaintiff "believe[s] that the act may result in imminent contact unless prevented from so resulting by the [plaintiff]'s self-defensive action or by his flight or by the intervention of some outside force."  Id. § 24.  "Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person."  Id. § 31; see McDonald v. Davis, 2009 WL 580456, at *10 (D.V.I. March 5, 2009).  A defendant is subject to liability for battery if: (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) "an offensive contact with the person of the other directly or indirectly results."  Restatement (Second) of Torts § 18 (1965).

Plaintiff claims that Kmart's Store Manager assaulted her when he "came into her office, leaned over her shoulder staring down her blouse at her breasts, which made Plaintiff feel nervous and anxious that he might touch her inappropriately."  Pl.'s Opp'n to Mot. for Summ. J. at 32; see Soria Warner Dep. 155:24-156:3.  Plaintiff alleges that the Store Manager also sat on her desk with his legs wide open facing Plaintiff and told her that "he liked her size and he

---

[2] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."  1 V.I.C. § 4 (2003).

wanted to hold on to her." Pl.'s Opp'n to Mot. for Summ. J. at 32. Additionally, Plaintiff alleges that her supervisor provoked and demeaned her by dangling the cash register keys in front of her, throwing the keys at her in a hostile manner and forcing her to bend down to pick them up. Plaintiff also claims that her supervisor yelled in her face and pushed her when she was eight months pregnant. See CSOF at ¶ 12. As a result of these alleged acts, Plaintiff avers that she suffered from panic attacks and began seeing Dr. Frank T. Bishop to receive treatment. Pl.'s Opp'n to Mot. for Summ. J. at 33. Plaintiff maintains that her panic attacks got so bad that she was constantly depressed and suffered extreme anxiety, requiring her to go to the emergency room on numerous occasions. Id.

With respect to the alleged incidents involving Kmart's Store Manager, the Court finds that Plaintiff has not come forward with sufficient evidence that the Store Manager acted with the specific intent to do her harm or cause her injury to state a viable exception from the WCA bar. See Eddy, 369 F.3d at 235; Davis v. Christian, 2005 WL 988854, at *10 (D.V.I. April 15, 2005). There is no indication that the Store Manager's alleged improper sexual conduct was intended to harm Plaintiff in any way. Even viewing Plaintiff's assault claim in the light most favorable to her, along with the benefit of all reasonable inferences that may be drawn therefrom, an imminent apprehension of harm on the part of Plaintiff is not established by the facts alleged. After the Store Manager sat on her desk with his legs wide open, he said to her "[a] woman like you . . . deserve to make more money tha[n] what you making." Warner Dep. 164:14-17. With respect to this verbal exchange, Plaintiff testified that she "thought it was a good thing." Id. at 164:21-165:2. Plaintiff's own account suggests that she did not feel threatened by this encounter and was not put in imminent apprehension of harm. Noticeably absent is any claim of an overt threat of harm or words which could be construed as a threat to do harm. See Davis, 2005 WL

8

988854, at *10.

On the other hand, the Court finds that the alleged acts of throwing the cash register keys at Plaintiff and pushing her may constitute intentional torts inflicted with the "actual, specific and deliberate intention to cause injury."  See Eddy, 369 F.3d at 235.  Drawing all reasonable inferences in favor of Plaintiff, the Court finds that a genuine issue of material fact exists and the evidence is such that a reasonable jury could find that the Kmart employee's conduct constitutes an intentional tort.  As there is evidence upon which a fact-finder may conclude that this incident upon which Plaintiff relies to support her claim of assault and battery was intended to harm her, the Court finds that the exception to the WCA is applicable herein.

### 2.  *Vicarious Liability*

"A master is subject to liability for the torts of his servants committed while acting in the scope of their employment."  Burlington Indus. v. Ellerth, 524 U.S. 742, 755-756 (1998) (citing Restatement (Second) of Agency, Sec. 219 (1) (1958)).  While an employer may be liable for both negligent and intentional torts committed by an employee "within the scope of his or her employment," the "scope of employment" requirement does not define the only basis for employer liability under agency principles.  Id. at 757-758.  In limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment.  The Restatement (Second) of Agency § 219(2) provides that:

 (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

 (a)  the master intended the conduct or the consequences, or

 (b)  the master was negligent or reckless, or

 (c)  the conduct violated a non-delegable duty of the master, or

 (d)  the servant purported to act or to speak on behalf of the principal and there was

9

reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

See also § 219, Comment e (Section 219(2) "enumerates the situations in which a master may be liable for torts of servants acting solely for their own purposes and hence not in the scope of employment").

The Court finds that subsections (b) and (d) of the Restatement (Second) of Agency § 219(2) are possible grounds for imposing vicarious liability in the present matter. Under subsection (b), an employer is liable when the tort is attributable to the employer's own negligence. § 219(2)(b). Thus, although the supervisor's alleged conduct in throwing keys at Plaintiff and pushing her is outside the scope of employment because the conduct was for personal motives, Kmart can be liable, nonetheless, if a jury finds that its own negligence is a cause of the conduct. Burlington Indus. 524 U.S. at 759. An employer is negligent with respect to tortious conduct of an employee if it knew or should have known that the conduct was taking place or was likely to take place and failed to stop it. Id. Thus, Defendant may be vicariously liable for the alleged assault and battery if it knew or should have known that Plaintiff was being subjected to such conduct and did nothing to prevent it from taking place.

Subsection 219(2)(d) of the Restatement (Second) of Agency concerns vicarious liability for intentional torts committed by an employee of the defending employer with immediate or successively higher authority over the plaintiff. Burlington Indus. 524 U.S. at 760. In discussing this subsection, the Supreme Court explained that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor" when a tangible employment action is taken. Id. at 764-765. "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." Id.; see Faragher v. City of

10

Boca Raton, 524 U.S. 775, 777 (1998); Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006); Fed.

Rule Civ. Proc. 8(c).  Although the alleged actions that provide the basis for Plaintiff's assault

and battery claim do not constitute "tangible employment action[s]," Defendant may

nevertheless be vicariously liable for assault and battery if it fails to establish an affirmative

defense.[3]  For the foregoing reasons, the Court finds that a reasonable jury may find that

Defendant is vicariously liable for assault and battery.  Consequently, Defendant's Motion for

Summary Judgment is denied as to Plaintiff's claim for assault and battery in Count 1 of her

Complaint.

## B.  Title VII of the Civil Rights Act of 1964

Title VII protects individuals from economic or tangible discrimination, such as the

denial or loss of a job or promotion, and prohibits a "work environment abusive to employees

because of their race, gender, religion, or national origin."  Harris v. Forklift Sys., Inc., 510 U.S.

17, 22 (1993); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986) ("a plaintiff

may establish a violation of Title VII by proving that discrimination based on sex has created a

hostile or abusive work environment").  To constitute discrimination within Title VII, the

harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's]

employment and create an abusive working environment.'"  Meritor, 477 U.S. at 67.  This

---

[3] The affirmative defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  See Burlington Indus.. 524 U.S. at 765.  The Burlington Court explained that, "[w]hile proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense.  And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.  No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."  Id.

standard is intended to "take[ ] a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury."  Harris, 510 U.S. at 21.  Only when the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the [employee's] employment and create an abusive working environment," is the law violated. Harris, 510 U.S. at 21 (internal quotes omitted).

Defendant argues that Plaintiff's hostile work environment and retaliation[4] claims under Title VII must be dismissed because Plaintiff failed to file a claim with the EEOC in a timely fashion.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 4-6.  Alternatively, Defendant contends that dismissal of Plaintiff's claims under Title VII is appropriate because the record in this case fails to establish any facts that would permit a reasonable juror to find in Plaintiff's favor.  Id. at 6-12.

### 1. *Statute of Limitations*

In order for a plaintiff to prevail on a Title VII claim, the plaintiff must have filed an employment discrimination charge with the EEOC within 300 days of the alleged discrimination, when there is a parallel state or territorial administrative agency for investigating discrimination complaints. Id. (citing 42 U.S.C. § 2000e-5(e)); see Rush v. Scott Specialty Gases, Inc., 113 F.3d

---

[4] Although Count 2 of Plaintiff's Complaint fails to assert a separate claim for retaliation under Title VII, the Court must construe Plaintiff's Complaint liberally and all reasonable inferences are drawn in Plaintiff's favor.  Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987); see also Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (the Court must liberally construe the complaint in Plaintiffs' favor) (citing Fed.R.Civ.P. 8(f) and Conley v. Gibson, 355 U.S. 41 (1957)). The court must take all of the well pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff. Colburn v. Upper Darby Township, 838 F.2d 663, 665 (3d Cir. 1988), see Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir.1989); Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988); Haymond v. Lundy, 2000 U.S. Dist. LEXIS 8585, at *1-2 (E.D. Pa., June 22, 2000).  In Count 2, Plaintiff re-alleges by reference paragraphs 1-97 of her Complaint, which contain factual allegations in support of her retaliation claim.  See Complaint at ¶ 98.  Construing the Complaint liberally, the Court finds that Plaintiff has pled a claim for retaliation in violation of Title VII and such claim is properly before the Court.

476, 480 (3d Cir. 1997); see also Ledbetter v. Goodyear Tire & Rubber Company, 127 U.S.

2162, 2168 (2007) (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 557 (1977)) ("[a]

discriminatory act which is not made the basis of a timely charge . . . is merely an unfortunate

event in history which has no present legal consequences"); Bostic v. AT&T of the Virgin

Islands, 166 F.Supp.2d 350, 356 (D.V.I. 2001) (citing Alexander v. Garner-Denver Co., 415 U.S.

36, 47 (1974)) ("Plaintiffs who fail to file a claim with the EEOC in a timely fashion may not sue

on the same claim").

As Plaintiff filed her EEOC charge on November 22, 2004, Defendant argues that any

claims of sexually harassing conduct that occurred before January 27, 2004 are time-barred

because such conduct in question occurred more than 300 days before Plaintiff filed her EEOC

charge. See Complaint at ¶ 91; Def.'s Mem. in Supp. of Mot. for Summ. J. at 4-5. Although

Plaintiff seeks to paint a picture of a single, continuing violation as the basis for her Title VII

claims, Defendant argues that the "continuing violations" theory is inapplicable to the facts of

this case. Id.

The continuing violation doctrine is an equitable exception to the timely filing

requirement. See Mathews v. Hermann, 2008 U.S. Dist. LEXIS 35726, at *21 (E.D. Pa. Apr. 30,

2008); Shahin v. Coll. Misericordia, 2006 U.S. Dist. LEXIS 65272, at *29 (M.D. Pa. Sept. 13,

2006). To establish that a claim falls within the continuing violations theory, the plaintiff must

do two things. First, she must demonstrate that at least one act occurred within the statutory

filing period. See Arthur v. Hovic, 2002 WL 32356629, at *2 (D.V.I. Sept. 24, 2002); see also

United Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1977) ("The crucial question is whether any

present violation exists"). Next, the plaintiff must establish that the discrimination is "more than

the occurrence of isolated or sporadic acts of intentional discrimination." Jewett v. International

13

Telephone & Telegraph Corp., 653 F.2d 89, 91-92 (3d Cir. 1981) (citations omitted).  The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern. West v. Philadelphia Electronics Co., 45 F.3d 744, 754 (3d Cir.1995).  Once the plaintiff has alleged sufficient facts to support use of the continuing violation theory, she may then offer evidence of, and recover for, the entire continuing violation. West, 45 F.3d at 755; Arthur, 2002 WL 32356629, at *2.

   In AMTRAK v. Morgan, 536 U.S. 101, 115-116 (2002), the Supreme Court established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. "The former must be raised within the applicable limitations period or they will not support a lawsuit."  O'Connor v. Newark, 440 F.3d 125, 127 (3d Cir. 2006) (citing Morgan, 536 U.S. at 113).  The latter can occur at any time so long as they are linked to a pattern of actions which continues into the applicable limitations period.  Id.  The Third Circuit found that the Supreme Court's "precise guidance as to what sort of acts are discrete" pointed very specifically to the following, non-exhaustive list of actions: "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation."  Id.; see Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007); Hermann, 2008 U.S. Dist. LEXIS 35726, at * 21-22.

   A hostile work environment claim "typically comprises a succession of harassing acts, each of which may not be actionable on its own."  Bronze Shields, Inc. v. New Jersey Dept. of Civ. Serv., 667 F.2d 1074, 1081 (3d Cir. 1981).  Such a claim "cannot be said to occur on any particular day."  Morgan, 536 U.S. at 115-116.  The actionable wrong is the overall environment rather than the individual acts that, taken together, create the environment.  Ledbetter, 550 U.S.

14

at 637 (citing Morgan, 536 U.S. at 114); see also Bronze Shields, Inc., 667 F.2d at 1081 ("certain types of violations are continuing in nature," making it appropriate to "measure[] the running time of the required time period from the last occurrence of the discrimination and not from the first occurrence").

In support of her Title VII claim, Plaintiff alleges numerous acts of sexual harassment by the Store Manager that occurred between 2002 and 2003.  Plaintiff further relies on the sex survey that purportedly occurred on or about January 11, 2003 and the conference call on January 27, 2003 as bases for her Title VII claim.  Complaint at ¶¶ 30, 34-35, 53-58, 61. Additionally, Plaintiff maintains that numerous discriminatory actions occurred within the 300 day filing period, between January 24, 2004 and November 22, 2004.  Such discriminatory actions consist of the alleged retaliation and harassment to which Plaintiff was subjected to by the Store Manager, her supervisors and other Kmart employees on or after January 27, 2004, including her reassignment from Personnel Manager to Front End Lead Associate in August of 2004.  See Pl.'s Opp'n to Mot. for Summ. J. at 16-17.

The Court finds that Plaintiff has alleged sufficient facts to establish that the harassment was "more than the occurrence of isolated or sporadic acts of intentional discrimination" See West, 45 F.3d at 754-755; see also Morgan, 536 U.S. 105 ("Consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, [is] permissible for purposes of assessing liability, so long as any act contributing to that hostile environment occurred within the statutory time period").  Consequently, under the auspices of Morgan, Plaintiff has set forth sufficient evidence for a jury to find that she has made out a continuing violation of a hostile work environment based on sexual harassment such that her claims occurring prior to January of 2004 are timely under Title VII.

15

## 2. *Hostile Work Environment*

A plaintiff can establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986). To prevail under a theory of hostile work environment based on sexual harassment, a plaintiff must establish that: (1) she was subjected to unwelcome harassment because of her gender; (2) the harassment was pervasive and regular; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in plaintiff's position; and (5) there is respondeat superior liability. See Jensen, 435 F.3d at 449; Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001) (citing Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996)); Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990); Whitmore, 2002 WL31574132, at *2.

When evaluating the validity of a plaintiff's sexual harassment claims, courts in this jurisdiction must look to the totality of the circumstances. Whitmore v. HEPC Sugar Bay, Inc., 2002 WL31574132, at *2 (D.V.I. Mar. 12, 2002); see West v. Philadelphia Elec. Co., 45 F.3d 774, 753 (3d Cir. 1995); see also Harris, 510 U.S. at 23 (recognizing the totality of the circumstances approach in hostile work environment claims). The Third Circuit explains this approach, by noting that "courts should not consider each incident of harassment in isolation. Rather, a court must evaluate the sum total of abuse over time." Durham Life Ins. Co. v. Evans, 166 F.3d 139, 155 (3d Cir. 1999). A court must judge circumstances such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001); see Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57 (1986). A court must evaluate each work environment

16

individually, "pay[ing] careful consideration [to] the social context in which particular behavior occurs and is experienced by its target." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).

The Court finds that the facts alleged by Plaintiff are sufficient for a reasonable jury to find that she has established all five elements of a hostile work environment.  First, a jury may conclude that Plaintiff was subjected to unwelcome sexual advances and harassment because of her sex.  She alleges that the Store Manager made lewd sexual comments about her body, "came into her office, leaned over her shoulder staring down her blouse at her breasts" and told her that "he wanted to hold on to her."  Pl.'s Opp'n to Mot. for Summ. J. at 32; Warner Dep. 155:24-156:3; Complaint at ¶ 27.

Second, a jury could determine that the alleged harassment was sufficiently severe and pervasive.  The female employees' alleged questions to Plaintiff regarding her sex life and favorite sexual positions as well as the Store Manager's sexual advances and inappropriate comments to and about Plaintiff are evidence thereof.  Id. at ¶¶ 30, 34; see also EEOC v. Smokin' Joe's Tobacco Shop, Inc., 2007 U.S. Dist. LEXIS 31512, at *18-19 (E.D. Pa. Apr. 27, 2007) (denying summary judgment for employer in sexual harassment hostile work environment case where  plaintiff was subjected to lewd comments, requests for dates, and sexually charged atmosphere in workplace).

Third, a jury could find that the alleged offensive conduct and harassment detrimentally affected Plaintiff, causing her extreme anxiety.  She testified that the Store Manager's behavior made her "feel nervous and anxious that he might touch her inappropriately."  Warner Dep. 155:24-156:3; Pl.'s Opp'n to Mot. for Summ. J. at 32.  As a result of the alleged harassment, Plaintiff claims that she suffered from panic attacks, which she had to be hospitalized for on

17

numerous occasions, and she began seeing Dr. Frank T. Bishop to receive treatment.  Id. at 33, 47; CSOF at ¶¶ 37-38.

Fourth, a jury may conclude that the alleged sexual harassment would have detrimentally affected a reasonable woman.  Evidence includes another female Kmart employee's testimony that sexual harassment permeated the office atmosphere and had a harmful effect on her.

Fifth, a jury may decide that respondeat superior liability is satisfied because, "[i]f supervisors create the hostile environment, the employer is strictly liable, though an affirmative defense may be available where there is no tangible employment action." Jensen, 435 F.3d at 452; see also Faragher, 524 U.S. at 777 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee").  Because Plaintiff has provided sufficient evidence to establish that there is a genuine issue of material fact, sufficient to go to a jury, Defendant's Motion for Summary Judgment is denied as to Plaintiff's claim for a hostile work environment under Title VII.

### 3.  *Retaliation*

A retaliation claim under Title VII is analyzed under a burden shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Plaintiff carries the initial burden of proving a prima facie case of retaliation by showing: (1) the employee engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action after or contemporaneously with the employee's protected activity; (3) a causal link exists between the employee's protected activity and the employee's adverse action.  Id.; see Moore v. City of Phila., 461 F.3d 331 (3d Cir. 2006); Sarullo v. United States Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003); see also Shahin v. Coll. Misericordia, 2006 U.S. Dist. LEXIS 65272, at

*51 (M.D. Pa. Sept. 13, 2006) (finding that plaintiff may establish prima facie case "by presenting evidence of overt discrimination, or by presenting evidence of both facially neutral mistreatment from which discriminatory animus may be inferred and overt discrimination").

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802; see Delli Santi v. CNA Ins. Companies, 88 F.3d 192, 199 (3d Cir. 1996).  If the defendant satisfies this requirement, then the burden of production shifts back to the plaintiff, who must show by a preponderance of the evidence that the reasons proffered by the defendant were only pretext for retaliation.  Id.  To survive a motion for summary judgment, the plaintiff must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory motive was more likely than not a motivating or determinative cause of the employer's action.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

Plaintiff maintains that she was retaliated against by the Store Manager and other Kmart employees because she had engaged in protected activity when she reported the alleged sexual harassment occurring at the store.  Complaint at ¶ 62.  Protected activities under Title VII include situations where an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII.  42 U.S.C. § 2000e-3(a). A formal letter of complaint to an employer is not the only way to meet the protected activity criterion.  Barber v. CSX Distribution Services, 68 F.3d 694, 702 (3d Cir. 1995).  It is necessary to analyze the message conveyed, rather than "the medium of conveyance."  Id. at 702.

Plaintiff telephoned Kmart's Human Resources District Manager in Puerto Rico and

19

Kmart's corporate office in Michigan to report the alleged sexual harassment occurring at the store.  Complaint at ¶ 62.  The Court finds that Plaintiff's actions in reporting the alleged sexual harassment constitutes protected activity under Title VII.  See Barber, 68 F.3d at 702; see also Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (finding that protected activities include formal charges of discrimination, "as well as informal protests of discriminatory employment practices, including making complaints to management").

In retaliation for her reporting the alleged sexual harassment, the Store Manager allegedly interfered with Plaintiff's job duties, increased her assignments to near impossible amounts, gave her a negative performance evaluation and filed false discipline reports against her.  RSOF at ¶ 18; Complaint at ¶¶ 63-64, 87-88.  The timing of the Store Manager's alleged actions in piling on work for Plaintiff and making it difficult for her to complete it, right after she made her complaints, supports an inference of retaliation. RSOF at ¶ 16; CSOF at ¶¶ 22-30; see also Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993) ("intervening pattern of antagonism" during the period between the protected activity and the adverse employment action can prove causation).

Plaintiff claims that the Store Manager subjected her to an adverse employment action by demoting her to Front End Lead Associate in August 2004.  RSOF at ¶ 10, 16.  The Court acknowledges that Plaintiff's reassignment may constitute an "adverse employment action" under Title VII.  The fact that she lost neither pay nor rank as a result of the transfer is not dispositive.  See Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 115-116 (3d Cir. 1996) (summary judgment reversed where plaintiff claimed that patrol assignment was less desirable than detective bureau, even though plaintiff did not lose pay or rank as a result of transfer); Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994) ("[A] transfer, even without

20

loss of pay or benefits, may, in some circumstances, constitute an adverse job action").

Additionally, Plaintiff maintains that her direct supervisors retaliated against her while she was assigned to the Front End by ignoring her pages, tampering with her schedules, and refusing to respond to any of Plaintiff's work requests such as her request for them to turn in work schedules for their Associates. Id.; see Pl.'s Opp'n to Mot. for Summ. J. at 25. The Store Manager purportedly refused to reprimand Plaintiff's supervisors and instead wrote up Plaintiff for complaining of the retaliation. Id. Based on the evidence presented by Plaintiff, a reasonable juror could find, by a preponderance of the evidence, that she was retaliated against for reporting the alleged sexual harassment occurring at Kmart. Because Plaintiff has provided sufficient evidence for a jury to conclude that Plaintiff was subjected to adverse employment action as a result of her engaging in protected activity, the Court finds that Plaintiff has met her initial burden under Title VII to establish a prima facie case of retaliation.

Defendant contends that there was a nineteen month lapse between Plaintiff's internal complaint in January 2003 and her transfer to the position of Front End Lead Associate in August 2004. See Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 5. Defendant argues that Plaintiff cannot establish a correlation between her protected activity and the complained-of actions because the time frame between her internal complaint and her transfer is too long for a reasonable jury to find a causal connection. Id.; but see Kachmar v. Sungard Data Sys., 109 F.3d 173, 178 (3d Cir. 1997) (finding that absence of immediacy between protected activity and adverse employment action did not disprove causation).

Additionally, Defendant argues that Plaintiff cannot establish that the change in her position constitutes an adverse employment action, which is necessary to sustain her retaliation claim. Id. at 26. Emphasizing that Plaintiff's compensation and benefit package was not

affected by the change in position, Defendant contends that Plaintiff's subjective view of the

desirability of the Front End Lead Associate position as compared to the Personnel Manager

position has no bearing on whether the change in position was an adverse employment action

under Title VII. Id. Even if it is considered an adverse employment action, Kmart testified that

it transferred Plaintiff to the position of Front End Lead Associate due to her alleged "declining

performance" in Human Resources, suggesting that Plaintiff's transfer was based on her job

performance rather than her internal complaint. See Pl.'s Opp'n to Mot. for Summ. J. at 17;

Def.'s Responses to Pl.'s First Set of Interrogatories at No. 2. Based on the above, the Court

finds that Defendant has produced evidence which tends to disprove Plaintiff's claim and such

evidence suffices to rebut the presumption of retaliation.

Rather than a response to her "declining performance," Plaintiff avers that the Store

Manager demoted her in an attempt to get her out of the office and away from observing the

ongoing sexual atmosphere pervading the Kmart office, so that she would not make any further

complaints regarding sexual harassment. RSOF at ¶ 10, 16. Although the Store Manager

allegedly told Plaintiff that she "would be a better asset to the store" as Front End Lead

Associate, he informed other Kmart employees behind her back that he was moving her to the

front of the store "so she would be closer to the door where he had wanted her for a long time."

Complaint at ¶ 68. The Court finds that Plaintiff has produced sufficient evidence from which a

fact-finder could reasonably disbelieve Defendant's articulated reasons for her reassignment or

believe that a discriminatory motive was more likely than not a motivating cause of Defendant's

actions. See Fuentes, 32 F.3d at 764; see also Farrell v. Planters Lifesavers Co., 206 F.3d 271,

281 (3d Cir. 2000) (finding that plaintiff can show adverse employment action resulted from

protected activity by providing evidence of inconsistent reasons for the adverse employment

action); Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986) (noting that court could take inconsistent explanations into account in finding causation necessary to satisfy prima facie case).

There is a genuine dispute as to whether Plaintiff was subject to retaliation by the Store Manager and her supervisors for filing her complaint regarding the alleged sexual harassment occurring at Kmart.  A genuine issue of material fact exists as to whether Plaintiff's reassignment to the position of Front End Lead Associate was in retaliation for her internal complaint and the evidence is such that a reasonable jury could return a verdict for Plaintiff.  Drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has provided adequate evidentiary support for her retaliation claim under Title VII to withstand summary judgment. Therefore, Defendant's Motion for Summary Judgment is denied as to Plaintiff's retaliation claim under Title VII.

### C.  10 V.I.C. § 64

Count 3 of Plaintiff's Complaint contends that Defendant's actions violate the Virgin Islands civil rights statute 10 V.I.C. § 64.  Defendant argues that Plaintiff cannot state a viable claim for discrimination under 10 V.I.C. § 64 because that claim has already been dismissed by the Court.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 12-13.

On October 18, 2005, the Court granted Defendant's Partial Motion to Dismiss and dismissed Count 3 of Plaintiff's initial Complaint, which asserted a violation of 10 V.I.C. § 64. See Order Granting Def.'s Partial Motion to Dismiss, October 18, 2005 (Docket No. 12).  The Court noted therein that the court in Miller v. Virgin Island Housing Authority, 2005 WL 1353395, at *5 (D.V.I. June 3, 2005), held that a civil action cannot be brought directly in court for violation of 10 V.I.C. § 64.  Id.

Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." American Civil Liberties Union v. Mukasey, 534 F.3d 181, 187 (3d Cir. 2008) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988)). "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." Id. (citation and quotation marks omitted); see also Council of Alternatives v. Hooks, 179 F.3d 64, 69 (3d Cir. 1999) (emphasizing that "the law of the case doctrine bars courts from reconsidering matters actually decided").

The Court finds that application of the law-of-the-case doctrine in this matter warrants dismissal of Plaintiff's claim in Count 3 of the Complaint inasmuch as the Court already has decided as a matter of law that there is no private right of action pursuant to 10 V.I.C § 64.[5] Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's claim for violation of 10 V.I.C. § 64.

### D.  **Negligent or Knowing Employment of the Store Manager**

In Count 4 of the Complaint, Plaintiff claims that Defendant "negligently and/or knowingly employed its Store Manager . . . with full knowledge of his propensities for sexual harassment, such that Defendants knew or should have known that it was creating an undue risk of harm to third parties, such as Plaintiff." Complaint at ¶ 106. However, the exclusive remedy provisions of the WCA preclude Plaintiff's claim for negligent or knowing employment of the

---

[5] Additionally, the Court notes that, to the extent that Plaintiff's claims in Count I of her Complaint are brought pursuant to Chapter 1 of Title 10 of the Virgin Islands Code, Plaintiff cannot recover because that chapter of Title 10 does not afford protection for discrimination on the basis of sex.  See Miller v. V.I. Hous. Auth., 2005 U.S. Dist. LEXIS 11146, at *4 (D.V.I. 2005); see also 10 V.I.C. § 2 ("Discrimination' includes refusal of sale or service, employment, or of setting up different standards in any of these, or segregation, based on race, creed, color, or national origin").

Store Manager creating a risk of harm to her because the injuries that Plaintiff allegedly suffered are compensable only under the WCA.  <u>See</u> 24 V.I.C. § 284(a).

The WCA provides in part: "Every employer shall pay compensation ... for the disability or death of an employee resulting from a personal injury or occupational disease arising out of and in the course of his employment, irrespective of fault as a cause of the injury or death."  24 V.I.C. § 252(a).  Virgin Islands courts interpret the "arising out of and in the course of his employment" language very liberally.  <u>See</u> <u>Whitmore</u>, 2002 WL31574132, at *3; <u>see also</u> <u>Jones v. James</u>, 17 V.I. 361, 364 (D.V.I. 1980) (noting that courts in this jurisdiction construe the time and place causation requirement of section 252(a) in an "extremely broad manner"); <u>Hammer v. Workmen's Compensation Comm'n</u>, 2 V.I. 56, 57 (D.V.I. 1945) ("[T]he injury arises out of the employment if it arises out of either the nature, conditions, obligations, or incidents of the employment"); <u>Chinnery</u>, 865 F.2d at 71 (noting the liberal interpretations of section 252(a) by Virgin Islands courts).

The plaintiff in <u>Whitmore</u> asserted a claim against her employer for negligent hiring, training and supervision of her supervisors.  Because her claim centered on the work place, the court found that the plaintiff's injuries arose out of and in the course of her employment.  <u>Id</u>. The plaintiff's injuries were covered by the WCA and her exclusive remedy against the defendants was a workers compensation claim.  <u>Id</u>. at *4.  For the same reasons set forth in <u>Whitmore</u>, Plaintiff's claims of negligent or knowing hiring or retention relative to the Store Manager's employment must be dismissed.

Moreover, in her Opposition to Summary Judgment, Plaintiff states that she "does not assert a claim of negligent hiring and supervision, but intentional assault and battery claims by management employees."  <u>See</u> Pl.'s Opp'n to Mot. for Summ. J. at 33.  It is apparent that

Plaintiff has abandoned her claim for negligent employment of the Store Manager inasmuch as she explicitly states that she is not asserting such a claim in her Opposition to Summary Judgment.  Accordingly, the Court grants Defendant's Motion for Summary Judgment with respect to Count 4 of Plaintiff's Complaint for negligent or knowing employment of Kmart's Store Manager.

### E.  Intentional Infliction of Emotional Distress

Defendant argues that Plaintiff failed to identify any facts indicating extreme or outrageous conduct that would support a finding of intentional infliction of emotional distress.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 15.

An action for intentional infliction of emotional distress requires four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."  Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979); see Alvarez v. Pueblo Int'l, Inc., 24 V.I. 141 (Terr. Ct. 1988);[6] Restatement (Second) of Torts §46 (1965).[7]  The conduct in question must have been done with the intention both to do the act and to produce emotional distress, or it must have been done recklessly in deliberate disregard for the high probability that emotional distress would follow.  Minerva Marine, Inc. v. Spiliotes, 2006 U.S. Dist. LEXIS 13922, at *119 (D.N.J. Mar. 13, 2006).

---

[6] In Alvarez v. Pueblo Int'l, Inc., the Territorial Court held that before an intentional infliction claim reaches the jury in the Virgin Islands, a plaintiff must present sufficient evidence that the defendant's conduct was so extreme and outrageous as to be considered indecent, atrocious and intolerable in our society.  Alvarez, 24 V.I. at 147 (citing Restatement (Second) of Torts §46 cmt. d).

[7] Section 46 of the Restatement (Second) of Torts states, in relevant part, that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm."

The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Restatement (Second) of Torts §46 cmt. d; see Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir.1988); Moolenaar v. Atlas Motor Inns, Inc., 616 F.2d 87, 89 (3d Cir. 1980). When there is no physical injury, the conduct is expected to be sufficiently extreme and outrageous to guarantee that the claim is genuine. Moolenaar, 616 F.2d at 89; see also Eddy v. Virgin Islands Water and Power Authority, 369 F.3d 227, 232 (3d Cir. 2004) (holding that plaintiff must "prove that he suffered severe distress that is not unreasonable, exaggerated, or unjustified"). In most cases, continuous malicious actions must exist before an employer may be held liable and courts will generally consider the pattern and duration of distress as well as employee susceptibility. McClease v. R.R. Donnelley & Sons Co., 226 F. Supp. 2d 695, 703 (E.D. Pa. 2002); see Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997).

Plaintiff argues that Defendant should be found liable for its supervisors' and employees' outrageous behavior, which allegedly caused her severe emotional distress. See Pl.'s Opp'n to Mot. for Summ. J. at 47. Plaintiff alleges that, during her employment with Defendant, (1) she was continuously subject to acts of sexual harassment by Kmart's supervisors and managerial employees, (2) after becoming aware of such conduct, Kmart failed to adequately investigate or address her complaints,[8] (3) Kmart failed to maintain Plaintiff's confidentiality when she reported the harassment, and (4) the Store Manager as well as other Kmart employees retaliated

---

[8] Plaintiff alleges that she complained to various Kmart decision-makers concerning the harassment she suffered at the hands of her immediate supervisors. See Pl.'s Opp'n to Mot. for Summ. J. at 37-38. She further alleges that no remedial action was ever taken after corporate decision-makers were put on notice of such harassment. Id.

against Plaintiff.  Id. at 49-50.  Plaintiff contends that Defendant is vicariously liable for its

employees' intentional acts of sexual harassment.  Id. at 34, 39

      As a result of Defendant's actions, Plaintiff avers that she suffered anxiety attacks which

resulted in her inability to breathe and her having to be hospitalized.  Id. at 47.  Plaintiff alleges

that "her anxiety wrecked havoc on her professional and personal life such that she could no

longer take care of her family, was constantly depressed and waking up in the middle of the night

with anxiety and had to go to the emergency room numerous times."  Id.  She began seeing Dr.

Bishop to help her handle her alleged anxiety attacks from the job stress. CSOF at ¶ 37.

      Courts have found instances of outrageous conduct in the employment context where an

employer has engaged in both sexual harassment and retaliatory behavior against an employee.

See Andrews v. Philadelphia, 895 F.2d 1469, 1487 (3d Cir. 1990); Bowersox v. P.H. Glatfelter

Co., 677 F. Supp. 307, 311 (M.D. Pa. 1988).  A corporation may be found liable for the

intentional infliction of emotional distress where a supervisor or decision-maker is made aware

of the sexual harassment of an employee, but outrageously fails to investigate the claim or take

any steps to address it.  See Davis v. U.S. Steel, 779 F.2d 209, 211 (4th Cir. 1985); Ford v.

Revlon, 734 P.2d 580, 585 (Ariz. 1987).  Ford v. Revlon involved a supervisor's relentless

sexual harassment of a subordinate over a period of approximately seventeen months.  Because

of the corporate hierarchy's failure to take steps to address the plaintiff's repeated pleas for

assistance, the court found that the defendant acted outrageously in completely ignoring the

plaintiff's situation, needlessly dragging out the matter for months and leaving the employee

wholly without redress.[9]  Revlon, 734 P.2d at 585.

---

[9] After ten months of relentless sexual harassment by her supervisor, the plaintiff in Ford v. Revlon was
told by the defendant's human resources "trouble shooter" to put the matter in the back of her mind and

In <u>Shaffer v. National Can Corp.</u>, 565 F. Supp. 909 (E.D. Pa. 1983), the plaintiff was the subject of sexual harassment over the course of almost four years.  Her supervisor repeatedly, and on one occasion publicly, invited her to accompany him socially.  <u>Id</u>. at 910.  When the plaintiff refused to accept his invitations, the supervisor made threats concerning the plaintiff's employment status and retaliated against the plaintiff by making her job difficult to perform.  <u>Id</u>. The district court found that these allegations were sufficient to state a cause of action for intentional infliction of emotional distress.  <u>Id</u>. at 915; <u>see also</u> <u>see also</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate or successively higher authority over the employee"); <u>Bowersox</u>, 677 F. Supp. at 311-312 ("That a supervisor would subject his female employee to highly offensive speech and conduct in a close working environment and then, as a result of her negative reaction to that conduct, make the employee's job impossible to perform could in the court's opinion lead an average member of the community to exclaim, 'Outrageous!'").

Drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has provided sufficient evidence such that a jury could find Kmart's employees' alleged sexually harassing conduct so outrageous and utterly intolerable in the workplace as to render Defendant vicariously liable for intentional infliction of emotional distress.  Defendant would surely have known that subjecting Plaintiff to continuous acts of sexual harassment would cause her severe emotional trauma.  The Court also finds that Plaintiff has presented sufficient evidence of her own distress to withstand summary judgment.  <u>See</u> <u>Eddy</u>, 369 F.3d at 232 ("[S]evere distress may encompass mental anguish, fright, horror, grief, worry and other emotional disturbances.

---

try to forget the situation.  <u>Revlon</u>, 734 P.2d at 585.  The defendant's Equal Employment Opportunity specialist never responded to the plaintiff concerning her complaints.  <u>Id</u>.

The extent of the severity is to be measured by whether any reasonable man could be expected to endure it").  Therefore, the Court denies Defendant's Motion for Summary Judgment as to Plaintiff's claim for intentional infliction of emotional distress.

**F.  Negligent Infliction of Emotional Distress**

Plaintiff makes a claim for negligent infliction of emotional distress in Count 5 of her Complaint.  A physical manifestation of emotional distress is a necessary element to recover on a claim for negligent infliction of emotional distress.  Restatements (Second) of Torts § 313; see Anderson v. Government of the Virgin Islands, 180 F.R.D. 284, 286 (D.V.I. 1998).  The Court finds that Plaintiff has provided sufficient evidence of a "physical manifestation" of emotional distress, as she alleges that Defendant's conduct caused her to suffer from panic attacks, which she had to be hospitalized for on numerous occasions.  See Pl.'s Opp'n to Mot. for Summ. J. at 47; CSOF at ¶¶ 37-38.  However, the exclusive remedy provisions of the WCA preclude Plaintiff's claim for negligent infliction of emotional distress because the injuries that she allegedly suffered are compensable only under the WCA. 24 V.I.C. § 284(a); see Chinnery, 865 F.2d 70; Whitmore, 2002 WL31574132, at *3.

The threshold inquiry in determining "whether the exclusive remedies of workmen's compensation apply is whether the injuries complained of fit within the definition of 'injury' set forth in the statute [as compensable], namely, 'harmful changes in the human organism.'" Robinson v. Hess Oil V. I. Corp., 19 V.I. 106, 109 (D.V.I. 1982) (quoting 24 V.I.C. § 251(a) (1981)); see Eddy, 369 F.3d at 232-233.  In order to be compensable under the WCA, Plaintiff's injuries must have resulted in a harmful change to her and must have "aris[en] out of and in the course of [her] employment" WCA §§ 251(a), 252(a).  "[T]he injury arises out of the employment if it arises out of either the nature, conditions, obligations, or incidents of the

30

employment." <u>Chinnery</u>, 865 F.2d 70 (internal citations omitted). Since Plaintiff's negligent infliction of emotional distress claim centers on the workplace, the Court finds that the alleged injuries arose out of and in the course of her employment. The exclusive remedy provision of the WCA accordingly bars Plaintiff's negligence claim. <u>See</u> <u>Sonny v. Pro Shop, Inc.</u>, 2009 U.S. Dist. LEXIS 3566, at *15 (D.V.I. Jan. 14, 2009) (finding that exclusivity provision of WCA applied to plaintiff's claim for negligent infliction of emotional distress). Therefore, the Court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's claim for negligent infliction of emotional distress.

### G. <u>Constructive Discharge in Count 7</u>

Count 7 of Plaintiff's Complaint claims that Defendant constructively discharged her without identifying any law which was violated whereas Count 8 contends that Defendant's actions constitute constructive discharge in violation of the WDA. See Complaint at ¶¶ 117, 120. To the extent that Plaintiff's constructive discharge claim in Count 7 is premised upon the WDA, it is duplicative of her constructive discharge claim asserted in Count 8. If, instead, Plaintiff's constructive discharge claim in Count 7 is based on Title VII, it is duplicative of her Title VII claim asserted in Count 2. In either case, Count 7 of Plaintiff's Complaint must be dismissed as duplicative of her other claims. <u>See</u> <u>Pourzal v. Marriott International Inc.</u>, 2006 U.S. Dist. LEXIS 60231, at *9 (D.V.I. Aug. 17, 2006) (stating that "[t]his Court has dismissed . . . . claims that are duplicative or indistinct from other asserted claims").

Alternatively, if Plaintiff claims that the alleged constructive discharge asserted in Count 7 violated some public policy, Count 7 would nevertheless be subject to dismissal. "[T]he public policy against wrongful termination is already protected by a comprehensive legislative scheme in the Virgin Islands by way of the Wrongful Discharge Act." <u>Mendez v. Coastal Systems</u>

Development, Inc., 2008 WL 2149373, at * 5 (D.V.I. May, 20 2008); see also Lima–Brito Dias v. WVC St. John, Inc., 2008 WL 789890, at *3 (D.V.I. Mar. 20, 2008) (dismissing "public policy" discharge claim and finding that WDA "is sufficiently broad to provide a remedy for an alleged violation of public policy based on disability discrimination, or, for that matter, any other sort of discrimination"). Accordingly, the Court finds that Count 7 must be dismissed either because it is duplicative of other claims in the Complaint, or if not duplicative, because it fails to state a cause of action.

### H. Constructive Discharge under the WDA

Defendant argues that Plaintiff cannot recover for constructive discharge in Count 8 of her Complaint because constructive discharge is not a cognizable claim under the WDA. See Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 19-20. Even if constructive discharge is a cognizable claim under the WDA, Defendant argues that Plaintiff has not asserted any facts to substantiate such a claim. Id. at 24-27. Additionally, Defendant maintains that Plaintiff was a supervisor while employed by Defendant and she cannot recover under the WDA because the WDA is preempted in its application to supervisors. Id. at 20-23. The Court will address each of Defendant's arguments.

#### 1. *Cognizable Claim Under WDA*

There is a split of authority among courts sitting in the Virgin Islands with respect to the viability of a claim for constructive discharge under the WDA.[10] The court in Harley v. Caneel Bay, Inc.,193 F. Supp.2d 833, 841-42 (D.V.I. 2002) recognized a claim for constructive

---

[10] The Court notes that the Supreme Court of the Virgin Islands has not yet ruled on the question of whether or not constructive discharge is a cognizable claim under the WDA. When confronted with an undecided issue of territorial law, the Court must predict how the Supreme Court of the Virgin Islands would rule on the issue. Edwards v, HOVENSA, LLC, 497 F.3d 355, 362 (3d Cir. 2007); see Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

discharge under the WDA whereas this Court in <u>Williams v. Kmart</u>, 2001 WL 304024, at *4

(D.V.I. March 5, 2001) held that constructive discharge is not a cognizable claim under the

WDA.[11]   The Court recently addressed this issue in another case before it and reversed its

previous ruling in <u>Williams v. Kmart</u>, 2001 WL 304024.  <u>See</u> <u>Fraser v. Kmart</u>, Civ. No. 2005-

0129 (D.V.I. April 24, 2009).  In a lengthy analysis, the Court predicted that the Supreme Court

of the Virgin Islands would find that discrimination claims for constructive discharge are

cognizable under the WDA.  <u>Id</u>.  Consequently, Plaintiff's constructive discharge claim under the

WDA is properly before the Court.

### *2.   Support for Constructive Discharge Claim*

The plaintiff carries the initial burden under the WDA to establish a prima facie case of

wrongful discharge.  <u>Rajbahadoorsingh v. Chase Manhattan Bank</u>, 168 F. Supp. 2d 496, 505

(D.V.I. 2001)[12] (<u>citing</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)).  To

accomplish this, the plaintiff must prove, by a preponderance of the evidence, that: (1) she was

---

[11] The Court notes that a Motion for Reconsideration of the plaintiff's WDA claim was filed in <u>Williams</u>
but the defendant's petition for chapter 11 bankruptcy protection stayed any further proceedings in the
case before the Court could rule on the motion.  Subsequently, the parties reached a settlement agreement
and the case was dismissed before a decision was issued on said motion.

[12] The court in <u>Rajbahadoorsingh</u> held that a claimants' burden of proof is the same under both the WDA
and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e).  <u>Rajbahadoorsingh</u>, 168 F. Supp.
2d at 505.  In evaluating whether Plaintiff has established a prima facie case under the WDA, the Court
predicts that the Virgin Islands Supreme Court would adopt the Title VII approach as the Virgin Islands
Superior Court did in <u>Fenton v. C&C Constr. and Maintenance, Inc.</u>, 48 V.I. 263, 270 (V.I. Super. Ct.
2007); <u>see</u> <u>Mendez v. Hovensa, L.L.C.</u>, 2008 U.S. Dist. LEXIS 25127, at *13 (D.V.I. March 24, 2008).
The burden shifting test adopted in <u>Rajbahadoorsingh</u> was applied to a WDA claim where an employer
decided to dismiss an employee for allegedly discriminatory reasons.  In the present matter, Plaintiff
terminated her employment on her own volition, claiming that she could not handle the alleged sexual
harassment and hostile working environment.  Because this case involves a claim for constructive
discharge, the Court will use a slightly modified version of the burden shifting test outlined in
<u>Rajbahadoorsingh</u> to account for the differences between constructive discharge and traditional wrongful
dismissal claims under the WDA.  <u>See</u> <u>Geraci v. Moody-Tottrup, Int'l, Inc.</u>, 82 F.3d 578, 581 (3d Cir.
1996); <u>see also</u> <u>Sarullo v. United States Postal Serv.</u>, 352 F.3d 789, 797-98 (3d Cir. 2003) (holding that
burden shifting test must be "tailored to fit the specific context in which it is applied").

an employee;[13] (2) of a covered employer;[14] (3) she was discharged; and (4) the discharge was wrongful.[15]  Id.  Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is equated to a formal discharge for remedial purposes.  Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004).  In order for the plaintiff to show that she was constructively discharged, she "must allege in good faith . . . that she resigned because her employer made her working conditions so unpleasant or difficult that she was forced to resign."  Harley, 193 F. Supp. 2d at 838; see also Clowes, 991 F.2d at 1162-63 (stating that "a reasonable employee will usually explore . . . alternative avenues before coming to the conclusion that resignation is the only option").  A court should look for evidence of coercion, such as threats of discharge, suggestions to the employee that he or she resign or retire, demotions or reductions in pay or benefits, alterations of job responsibilities, unfavorable performance evaluations, and false accusations of misconduct.  Id. at 1161-62; see Sznaider v. Livengrin Found., Inc., 2001 U.S. Dist. LEXIS 24180 at * 10 (E.D. Pa. Nov. 20, 2001).

In cases such as this one, involving claims of sexual harassment against an employer, the harassment must be sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive work environment.  See Weston v. Pennsylvania, 251 F.3d 420, 425-26 (3d Cir. 2001).  This is an objective test, which requires that the plaintiff show that the working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign.  Id.; see also Goss, 747 F.2d at 888 (adopting objective

---

[13] An "employee" is one who is engaged in labor employment, but is not, among other things, an agricultural laborer, a seaman, a volunteer, or an executive/professional.  See 24 V.I.C. § 62.

[14] An "employer" is a person who "has employed five (5) or more employees for each working day in each of the twenty (20) or more calendar weeks in the two (2) year period proceeding a discharge, but not a 'public employer.'"  See 24 V.I.C. § 62.

[15] Neither Plaintiff's status as an "employee" nor Defendant's status as a "covered employer" is in dispute in this case.  Therefore, the Court will not address these issues.

standard for finding constructive discharge, which requires court finding that "employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign").

If the plaintiff succeeds in establishing a prima facie case, a presumption of wrongful discharge will arise against the employer.  See Rajbahadoorsingh, 168 F. Supp. 2d at 505.  The burden of production then shifts to the employer to rebut the presumption.  Id.; see Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981); Smith v. V.I. Port Authority, 2008 U.S. Dist. LEXIS 67737 at *54-55 (D.V.I. Aug. 29, 2008).  Under this second prong, the employer must produce evidence which tends to disprove the plaintiff's claim that she was wrongfully discharged.  Rajbahadoorsingh, 168 F. Supp. 2d at 505 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Burdine, 450 U.S. at 255).

If the employer rebuts the presumption of wrongful discharge, the burden of production shifts back to the plaintiff to show "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the employer's defense such that a reasonable fact-finder could rationally find in favor of the plaintiff.  Id. (citing Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)); see Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 368 (3d Cir. 2008).  Under this third and final prong, the employee must produce evidence which raises a genuine issue of fact regarding whether or not she was wrongfully discharged.  "[I]f the plaintiff has pointed to evidence sufficient[ ]" to establish a genuine dispute of material fact, "to survive summary judgment, the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." Fuentes, 32 F.3d at 764.

Plaintiff claims that unwelcome sexual conduct on the part of Defendant's employees and supervisors created an intimidating, hostile, and offensive working environment so unpleasant

that a reasonable person in Plaintiff's shoes would have felt compelled to resign.  See RSOF at

¶¶ 9, 36; Pl.'s Opp'n to Mot. for Summ. J. at 11.  Specifically, Plaintiff alleges that Kmart's

Store Manager made sexual advances to Plaintiff by looking down her blouse, telling her that he

liked women her size and asking her out on a date.  See Warner Dep.155:24-156:4, June 5, 2007.

Additionally, Plaintiff claims that several other women in the office made sexual comments and

inquiries that made Plaintiff uncomfortable.  See RSOF at ¶¶ 9, 16.  Plaintiff alleges that the

women asked her about her favorite sexual positions, how many sex partners she has had, who

she was currently having sex with, and demanded to see her underwear.  Id.  Plaintiff reported

the improper behavior and lewd language of the female staff to the Store Manager but he

allegedly disregarded the complaint.  Id.  Plaintiff claims that her complaint to the Regional

Human Resources Manager failed to remedy the situation and actually made it worse.  Id. at ¶¶

17-18; see CSOF at ¶¶ 22-23, 25, 28, 32.  Plaintiff avers that she was retaliated against for

lodging her complaint and was demoted to the position of Front End Lead Associate.  Id. at ¶¶ 3,

22, 28, 32; Complaint at ¶¶ 63-64, 87-88.

Defendant contends that the alleged discriminatory events are too temporally remote to

Plaintiff's resignation for a reasonable fact-finder to find that her working conditions were so

intolerable that a reasonable person would have been forced to resign.  See Def.'s Reply Mem. in

Supp. of Mot. for Summ. J. at 25.  Plaintiff relies on her transfer from the position of Personnel

Manager to Front End Lead Associate in August 2004 as an alleged act of retaliation that was a

precipitating factor to her resignation in October 2005.  However, as Defendant points out,

Plaintiff never lodged a complaint about the change in her job position or sought a transfer to

another Kmart store prior to her resignation.  Id. at 26.  When the Store Manager advised her of

the change in position, stating that "you are the only one the associates respect, and will bring the

36

front back to how it used to be," Plaintiff "felt like it was good that he thought of me like that." See Warner Dep. 166:17-18.  Neither her reaction nor her failure to register a complaint about the transfer at the time of the change supports Plaintiff's allegation that she was demoted in retaliation for her lodging a complaint about the alleged sexual harassment.

Plaintiff maintains that her transfer was an adverse employment action and, despite her protests that she was suffering from an anxiety disorder, she was assigned to be Front End Lead Associate in an attempt to force her to resign.  See RSOF at ¶¶ 23-25.  After her reassignment, Plaintiff alleges that her supervisors began harassing her with assaulting behavior, ridicule and taunts.  See Pl.'s Opp'n to Mot. for Summ. J. at 10.  Specifically, Plaintiff claims that her supervisors made rude comments about her in front of customers, constantly interfered with her work and forced her to degrade herself by bending down to pick up cash register keys.  Id. When Plaintiff tried to explain the situation to the Store Manager, he allegedly wrote up a disciplinary report on Plaintiff as if she had done something wrong.  Id.  Plaintiff avers that the sexual harassment and retaliation became so severe that she became physically ill and had to be taken to the emergency room on the day she resigned because she was suffering from a severe anxiety attack.  Id.

Based on the evidence presented by Plaintiff, a reasonable juror could find, by a preponderance of the evidence, that the allegedly abusive working environment became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign. Therefore, the Court finds that Plaintiff has met her initial burden under the WDA to establish a prima facie case of wrongful discharge.  In addition, Defendant has produced evidence which tends to disprove Plaintiff's constructive discharge claim and the Court finds that such evidence suffices to rebut the presumption of wrongful discharge.

There is a genuine dispute as to three material facts: (1) whether Plaintiff was subject to sexual harassment or discrimination during her employment and to what extent, (2) whether Defendant made Plaintiff's working conditions so difficult or unpleasant that a reasonable person would feel compelled to resign, and (3) whether Plaintiff terminated her employment due to the alleged hostile working environment created by Defendant.  Drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has provided adequate evidentiary support for her constructive discharge to withstand summary judgment.  A genuine issue of material fact exists and the evidence is such that a reasonable jury could return a verdict for Plaintiff.

### *3.  Whether Plaintiff was a Supervisor*

Defendant argues that Plaintiff was a supervisor at the time of her resignation and, therefore, she is not afforded protection under the WDA.  See Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 20.  The WDA is preempted by the National Labor Relations Act ("NLRA") to the extent that it applies to supervisory employees.  See St. Thomas-St. John Hotel & Tourism Assoc. v. Government of U.S. Virgin Islands ex. rel. Virgin Islands Dept. of Labor, 357 F.3d 297, 304 (3d Cir. 2004).[16]  The NLRA defines a supervisor as:

> [A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).  The Supreme Court has found that an employee need only perform one of the statutory supervisory functions to qualify as a supervisor.  NLRB v. Health Care &

---

[16] Because "the WDA would have such an effect on employers by exerting a significant degree of compulsion upon employers to bargain with supervisors as employees," the Third Circuit held that the WDA violates Section 14(a) of the NLRA and as such is federally preempted by the NLRA in its application to supervisors.  St. Thomas-St. John Hotel & Tourism Assoc., 357 F.3d at 304 (citing Beasley v. Food Fair of North Carolina, Inc., 416 U.S. 657 (1974)).

Retirement Corp. of America, 511 U.S. 571, 573-574 (1994); see also National Labor Relations Board v. Kentucky River Community Care, Inc., 532 U.S. 702, 713 (2001) ("Employees are statutory supervisors if (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions, (2) their exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment, and (3) their authority is held "in the interest of the employer").

Defendant argues that Plaintiff's supervisory status is evidenced by her testimony admitting that she had subordinates in her capacity of Front End Lead Associate. See Warner Dep. at 177:11-15; Def.'s Mem. in Supp. of Mot. for Summ. J. at 21; Def.'s Statement of Facts ("SOF") at ¶ 10. When asked, "[d]id you supervise anyone," Plaintiff responded, "[y]es, the checkout operators and the supervisors." Warner Dep. 177:12-15. Furthermore, Plaintiff identified at least eleven individuals whom she supervised and testified that "[t]here was [sic] lots more, yea." Id. at 177:16-178:8. The job description for the position of Front End Lead further evidences Plaintiff's supervisory status. See Exhibit 2 to SOF. Not only does the job description require the Front End Lead Associate to be a "leader," but it requires the person holding that position to "manage the front end, service desk and layaway areas," and "[t]rain and monitor Checkout Operators to ensure proper recording of all selling price differences." Id. Plaintiff's position as Front End Lead Associate gave her the authority to responsibly direct other Kmart's associates and the Court finds that the aforementioned duties provide strong evidence that she was as a "supervisor" under the NLRA. See Kentucky River Community Care, Inc., 532 U.S. at 713; 29 U.S.C. § 152(11).

Plaintiff contends that her position of Front End Lead Associate at the time she resigned did not permit her "to hire, promote, transfer, suspend, terminate or address the grievances of any

Kmart employee," which establishes that she was not a supervisor at Kmart.  CSOF at ¶ 23; Pl.'s

Opp'n to Mot. for Summ. J. at 12; see 29 U.S.C. § 152(11).  Additionally, Plaintiff avers that, if

she did have any authority in connection with the foregoing, the exercise of such authority was

"not of a merely routine or clerical nature, but require[d] the use of [her] independent judgment."

Id.  In support thereof, Plaintiff brings the Court's attention to an incident that occurred on

September 27, 2004, just over a month after she was assigned to the Front End Lead Associate

position.  Pl.'s Opp'n to Mot. for Summ. J. at 13.   Plaintiff had ordered the Service Desk

Associate, who was one of the employees she identified as her subordinate, to run a register but

the employee refused to comply.  Id.  In response to the employee's alleged insubordination,

abusive language, and refusal to work with Plaintiff, she requested that the Manager of the Front

End resolve the situation. See RSOF at ¶ 10; Pl.'s Opp'n to Mot. for Summ. J. at 12.  However,

Plaintiff claims that no action was taken and she was not permitted to either discipline, transfer,

or terminate the abusive employee.  Id. at 13.  Plaintiff maintains that, if she possessed the

requisite authority as a "supervisor" as the term is defined by the NLRA, she would have been

able to take independent action against the insubordinate employee.  Id.

       The Court finds that the incident described by Plaintiff fails to establish that she was not a

supervisor.  Although Plaintiff was unable to assign her subordinate employee to cash registers,

which was part of her job as Front End Lead Associate, she was able to take corrective action

against the employee.  See Def.'s Resp. to Pl.'s Concise Statement of Additional Facts

("RCSOF") at Exhibit 2 (Personnel Interview Record prepared by Plaintiff and designated SW-

0476).  Plaintiff prepared a Personnel Interview Record that she signed memorializing the

incident and which became a permanent part of her subordinate employee's personnel file at

Kmart.  Id.  Thereafter, on September 29, 2004, a Notice of Corrective Action was issued against

the employee relative to her insubordination to Plaintiff, which also became a permanent part of the employee's personnel record.  See SOF at Exhibit 2.  In that Corrective Action Notice, it was documented that the Store Manager also had verbally reprimanded the employee as it relates to the same incident.  Id.

From this incident, it is evident that Plaintiff was authorized to assign the subordinate employee to run a register and operate as a cashier, which was different from the duties normally performed by the employee as a Service Desk Associate. It also is evident that the exercise of this authority required independent judgment on the part of Plaintiff to responsibly direct her subordinate employees to perform cashier duties as opposed to their regular duties.  In so doing, Plaintiff had to assess the needs of the store at the time and independently determine that the customers' needs were better served by her subordinate employees' running a register than attending to their regular duties.  The Court finds that her authority to assign associates to undertake functions other than their normal duties in an effort to better meet the needs of Kmart's customers cannot be characterized as routine or clerical as Plaintiff suggests. See Kentucky River Community Care, Inc., 532 U.S. at 713; 29 U.S.C. § 152(11).

Furthermore, Plaintiff's preparation of a Personnel Interview Form that became a permanent part of her subordinate's personnel record evidences that she was duly authorized to effectively recommend discipline of her subordinates, yet another statutorily prescribed supervisory function.  Plaintiff argues that she could not independently issue the disciplinary warning to her subordinate employee and instead had to illicit the help of her own supervisor to address the issue. See Pl.'s Opp'n to Mot. for Summ. J. at 12. This fact, however, does not cast doubt on Plaintiff's supervisory status because she still effectively recommended discipline of her subordinate in spite of the fact that it was subject to her supervisor's approval.  Id. at 13; see

41

also NLRB v. Attleboro Assocs., Ltd., 176 F.3d 154, 164 (3d Cir. 1999) (recognizing that NLRA does not preclude nurse from having supervisory status merely because her recommendation is subject to superior's investigation)(citations omitted); Caremore, Inc. v. NLRB, 129 F.3d 365, 369-370 (6th Cir. 1997) (rejecting Board's argument that nurses did not effectively recommend discipline because their recommendation subject to review by higher authority).  Moreover, the issuance of the Corrective Action Notice against her subordinate employee undermines Plaintiff's contention that "Kmart refused to take any action" relative to the situation.  See Pl.'s Opp'n to Mot. for Summ. J. at 12-13.

Plaintiff's own testimony unequivocally establishes that the "checkout operators and the [front end] supervisors" were under her supervision when she was the Front End Lead Associate at Kmart and that she supervised in excess of eleven individuals in that capacity. Warner Dep. 177:16-178:8.  Additionally, Plaintiff's supervisory status is evidenced by her authority to assign and responsibly direct Kmart's associates.  The Court finds that Plaintiff's testimony in conjunction with her job duties, authorizing her to assign, direct and recommend discipline for subordinate employees, provide compelling evidence of Plaintiff's supervisory status as prescribed by the NLRA.  See Kentucky River Community Care, Inc., 532 U.S. at 713; 29 U.S.C. § 152(11).  Because the WDA is preempted in its application to supervisors and Plaintiff was a supervisor at Kmart, she cannot recover for her claim of constructive discharge pursuant to the WDA.  See St. Thomas-St. John Hotel & Tourism Assoc., 357 F.3d at 304. Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's claim for constructive discharge under the WDA.

I.   **Intentional or Negligent Misrepresentation**

In Count 6, Plaintiff alleges that Defendant made intentional or negligent

misrepresentations to her regarding her transfer to Front End Lead Associate from her position as Personnel Manager.

### 1. *Intentional Misrepresentation*

To successfully allege an act of fraud or intentional misrepresentation, a complainant must demonstrate: (1) a knowing misrepresentation of a material fact; (2) intent by the defendant that the plaintiff would rely on the false statement; (3) actual reliance; and (4) detriment as a result of that reliance.[17]  In re Tutu Wells Contamination Litig., 32 F.Supp.2d at 802 (citing Restatement (Second) of Torts, § 530); see Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir. 1992); Pourzal, 2006 U.S. Dist. LEXIS 60231, at *12.  Fraud occurs only when a person of ordinary prudence and comprehension would rely on the misrepresentations.  See Adolescent Psychiatry, S.C. v. Home Life Ins. Co., 941 F.2d 561, 571 (7th Cir. 1991).

Plaintiff claims that Defendant represented that she would be promoted from her position as Personnel Manager to Front End Lead Associate and such promotion would remove her from reporting to her immediate supervisor, thereby relieving her from the hostile work environment she was experiencing. Specifically, Plaintiff avers that Defendant "misrepresented to Plaintiff that she would be promoted, . . . but instead . . . reassigned [her] to the font of the store," and

---

[17] The Federal Rules of Civil Procedure also require that allegations of misrepresentation be pled with specificity.  Fed. R. Civ. P. 9(b) ("Rule 9"); see also Lum v. Bank of America, 361 F.3d 217, 225 (3d Cir. 2004) (applying Rule 9's requirements to a misrepresentation claim).  Rule 9's requirements "may be satisfied if the complaint describes the circumstances of the alleged fraud with 'precise allegations of date, time, or place' or by using some means of 'injecting precision and some measure of substantiation into their allegations of fraud.'"  Bd. of Trs. v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002) (citing Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999)); see Rolo v. City Inv. Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998); see also In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 217 (allegations of fraud must state all essential factual background that would accompany "the first page of any newspaper story – that is, the who, what, when, where and how" of events at issue).  Allegations of misrepresentation must also describe why or how the representations were false when they were made. See Pourzal, 2006 U.S. Dist. LEXIS 60231, at *13; Charleswell v. Chase Manhattan Bank, N.A., 308 F. Supp. 2d 545, 569-70 (D.V.I. 2004).

alleges that she "relied on the representations of [Kmart] in continuing her employment . . . " Complaint at ¶¶ 114-115.  Plaintiff alleges that she was transferred in August of 2004 by the Store Manager, an authorized agent of Defendant.  Id. at ¶ 66.   She claims that the Store Manager told her that the reason for the change was that Plaintiff "will be the best person for that position because the associates respect" her and she "would be a better asset to the store" as Front End Lead Associate. Warner Dep. 169:16-17; Complaint at ¶ 67.  However, Plaintiff alleges that Defendant informed other Kmart employees behind her back that he was moving Plaintiff "so she would be closer to the door where he had wanted her for a long time."  Id. at ¶ 68.

The Court finds that the Store Manager's alleged false promise to promote Plaintiff constitutes a knowing misrepresentation of material fact that he intended Plaintiff to rely on and Plaintiff did so rely to her detriment.  Plaintiff's allegations satisfy the four essential elements required to demonstrate fraud or intentional misrepresentation: (1) the Store Manager allegedly told Plaintiff that she would be promoted, (2) the Store Manager allegedly made the statement because he wanted Plaintiff to move to the front of the store, (3) Plaintiff accepted her new position as Front End Lead Associate; and (4) Plaintiff allegedly suffered from severe anxiety and stress as a result of her moving to the front of the store.  Therefore, the Court finds that Plaintiff has sufficiently alleged an act that amounts to fraud, deceit, or intentional misrepresentation.  See D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984) ("[T]he factual allegations of the complaint must be viewed as true").

### 2. *Negligent Misrepresentation*

To successfully state a claim for negligent misrepresentation, a complainant must demonstrate: (1) the defendant made a representation that was false; (2) the defendant should

44

have known the representation was false; (3) the plaintiff suffered pecuniary loss as a result of his or her justifiable reliance upon the information; and (4) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information.  See In re Tutu Water Wells Contamination Litig., 32 F. Supp. 2d 800, 807 (D.V.I. 1998) (citing Restatement (Second) of Torts § 552); See Pourzal, 2006 U.S. Dist. LEXIS 60231, at *16.  The representation must also be false when it is made. Charleswell, 308 F. Supp. 2d at 568 (quoting L.E.B. Enters., Inc. v. Barclays Bank, P.L.C., 33 V.I. 42, 46 (Terr. Ct. 1995)).

Based on the record in this case, there is no indication that Plaintiff suffered any pecuniary loss as a result of her reliance upon the alleged misrepresentation.  Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's claim for negligent misrepresentation.

**J.  Punitive Damages**

Defendant contends that Plaintiff's claim for punitive damages in Count 9 of her Complaint must be dismissed because such a claim is not independently actionable.  See Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 52.  Punitive damages are awarded at the jury's discretion to "punish the defendant for his outrageous conduct and to deter him and others like him for similar conduct in the future."  Restatement (Second) of Torts §908(1).  Reckless disregard for the plaintiff's rights or intentional violations of law are sufficient to trigger a jury's consideration of the appropriateness of punitive damages.  Smith v. Wade, 461 U.S. 30, 51 (1983).  Although punitive damages do not constitute a distinct cause of action, a jury may find that Plaintiff is entitled to such damages with respect to her claims in Counts 1, 2, 5 and 6 of her Complaint.  Therefore, the Court will not dismiss Plaintiff's claim for punitive damages at this preliminary juncture in the case.

## IV.    CONCLUSION

What remains of Plaintiff's Complaint, as a result of the Court granting summary judgment on certain claims for the reasons discussed, are Plaintiff's claims against Defendant for (A) assault and battery as alleged in Count 1, (B) hostile work environment and retaliation under Title VII as alleged in Count 2, (C) intentional infliction of emotional distress as alleged in Count 5, (D) intentional misrepresentation as alleged in Count 6, and (E) punitive damages as alleged in Count 9.  Summary judgment is granted in Defendant's favor on Plaintiff's claims for (A) violation of the Virgin Islands civil rights statute 10 V.I.C. § 64 as alleged in Count 3, (B) negligent or knowing employment creating an undue risk of harm as alleged in Count 4, (C) negligent infliction of emotional distress as alleged in Count 5, (D) negligent misrepresentation as alleged in Count 6, (E) constructive discharge as alleged in Count 7, and (F) constructive discharge under the WDA as alleged in Count 8.

**ENTERED this 27th day of May, 2009.**

_____/s/_____
**HONORABLE RAYMOND L. FINCH**
**SENIOR U.S. DISTRICT JUDGE**